UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                           Case No. 4:12-cr-20110
                                              4:13-cv-12974
BENJAMIN LEE MILLER,                                         HON. MARK A. GOLDSMITH

       Defendant.
_____/

### ORDER DENYING DEFENDANT'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255 (DKT. 29)

## I.  INTRODUCTION

      This matter is before the Court on Defendant Benjamin Lee Miller's Motion to Vacate Sentence Under 28 U.S.C. § 2255 (Dkt. 29).  Defendant, who pled guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), claims that he was denied effective assistance of counsel.  For the reasons discussed below, the Court denies Defendant's motion (Dkt. 29).

## II. BACKGROUND

      A federal grand jury issued a two-count indictment against Defendant in February 2012, charging him with distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  Indictment (Dkt. 3).  Defendant retained an attorney to represent him.

      The parties subsequently agreed to a Rule 11 plea agreement.  Under the agreement, Defendant would plead guilty to count two of the indictment, for which the agreement stipulated to the factual predicate.  Plea Agreement at 1-2 (Dkt. 15).  The agreement also specified that the

1

agreed-upon sentencing guideline range was 63-78 months, and that, after factoring in certain adjustments, the sentence of imprisonment imposed by the Court could not exceed the top of the sentencing guideline range under the agreement.  Id. at 2, 4.  The agreement also specified that "Defendant understands that defendants generally have the right to attack their convictions and sentences by filing post-conviction motions, petitions, or independent civil actions.  As part of this agreement, however, defendant knowingly and voluntarily waives that right and agrees not to contest his/her conviction or sentence in any post-conviction proceeding, including — but not limited to — any proceeding under 28 U.S.C. § 2255."  Id. at 7.  As part of the agreement, the Government agreed to dismiss count one of the indictment.  Id. at 6.

       The Government, Defendant, and Defendant's counsel signed the plea agreement.  Id.  at 10.  Directly above Defendant's and Defendant's counsel's signatures is the following language:

> By signing below, defendant acknowledges having read (or been read) this entire document, understanding it, and agreeing to its terms.  Defendant also acknowledges being satisfied with defense attorney's advice and representation.  Defendant acknowledges having had a full and complete opportunity to confer with counsel, and that all of defendant's questions have been answered by counsel.

Id.

       On March 29, 2012, Defendant, Defendant's counsel, and the Government consented to allow Magistrate Judge Michael Hluchaniuk to conduct a plea hearing according to the procedures outlined in Rule 11 of the Federal Rules of Criminal Procedure.  See Consent to Enter Guilty Plea (Dkt. 13).  Accordingly, the Magistrate Judge held a plea hearing that same day.  At the hearing, the Magistrate Judge stated that the purpose of the hearing was to allow Defendant to change his plea to guilty:

> The Court:  Mr. Miller, it's my understanding that you are here today in Court for purposes of changing your plea from not guilty

2

as previously entered in this matter, to guilty to one count of the indictment pursuant to the terms of a written Rule 11 agreement, is that accurate?

The Defendant:  Yes, sir.

Plea Hr'g Tr. at 2 (Dkt. 22).

The Magistrate Judge then placed Defendant under oath, and asked a series of questions to clarify that Defendant had a limited college education, understood English, was not suffering mental illness or under the influence of any drug, and was "thinking clearly."  Id. at 4-6.  The following exchanges relevant to the instant motion then occurred:

The Court:  Okay, . . . do you have any concern about your client's ability to participate knowingly in today's proceeding?

[Defendant's Counsel]:  I do not, Judge.  We've went over the Rule 11 a couple days ago.  He had an opportunity to think about it, and he came back and then signed it.  So I'm comfortable he knows exactly what he's doing today.

\*       \*       \*

The Court:  Are you satisfied with the advice that [counsel] has given you so far in this matter?

The Defendant:  I am, sir.

\*       \*       \*

The Court: By pleading guilty of course you will not have a trial in this matter and there are certain rights that you have associated with actually having a trial.  And I want to make sure that you know that you have those and that you are giving those up, at least knowingly giving those up.
     Of course, you – you have your right to maintain your plea of not guilty and go to trial if that's what you wish.  Do you understand that?

The Defendant:  I understand.

\*       \*       \*

3

The Court:  By pleading guilty, there will be no trial but you will be adjudged guilty just the same as if you had been found guilty at trial.  Do you recognize that?

The Defendant:  I do.

The Court:  A person who goes to trial and is found guilty normally has the right to appeal that conviction and you are giving up your right to appeal your conviction through this guilty plea process based on the terms in this Rule 11 agreement.  Do you recognize that?

The Defendant:  I do, sir.

*        *        *

The Court:  Now the – the anticipated guilty plea here is pursuant to the terms of a written Rule 11 agreement as it's called.  Have you gone over that agreement with [counsel] to your satisfaction?

The Defendant:  I have, sir.

The Court:  Do you believe that this agreement represents the entire agreement that you have with the Government?

The Defendant:  Yes, sir.

The Court:  What I'm asking you there is, were there any other promises made to you verbally that caused you to want to plead guilty?  Something that was promised to you that's not in this written document?

The Defendant:  I completely accept this responsibility, sir.

The Court:  Well, my question is, has anybody made any promises to you that — that are not written down in this agreement — that caused you to want to plead guilty?

The Defendant:  No.  No, sir.

The Court:  Okay.  So no one said oh, you're going to get probation, just plead guilty and I know you'll get probation.  No one said anything like that, did they?

The Defendant:  That is correct.

4

The Court:  Okay.  Do you think you understand the terms of this plea agreement?

The Defendant:  Yes, sir.

The Court:  Do you understand that the sentencing Judge, Judge Goldsmith in this instance, does not have to accept this agreement because it does contain some limitations in the Judge's discretion to impose a sentence on you. . . . If for some reason he later decides not to accept it,  . . . then he would give you the opportunity to withdraw your guilty plea and go to trial if that's what you wish.  Do you understand that?

The Defendant:  I do.

*      *      *

The Court:  Okay.  Now of course Judge Goldsmith, as I indicated, will be imposing the sentence in this case and his sentence will be based on federal law including the federal sentencing guidelines. Do you understand that?

The Defendant:  Yes, sir.

The Court: Okay.  And the federal sentencing guidelines include the determination of what's called a sentencing guideline range which is a range of months which is sort of a suggested sentence that could be imposed under the circumstances here.   Do you understand that?

The Defendant:  I do, sir.

The Court:  Have you discussed the guidelines that apply to you with [counsel]?

The Defendant:  Yes, sir.

The Court:   Do you recognize that Judge Goldsmith will independently calculate those sentencing guidelines and his calculation of those guidelines may be different than the guidelines that have been estimated and agreed to by your lawyer and the Government's lawyer?

The Defendant:  I understand, sir.

                              *       *       *

> The Court:  Do you believe you're pleading guilty of your own free will because you are in fact guilty of this offense in Count 2 of the indictment?
>
> The Defendant:  I am, sir.
>
> The Court:  Okay.  Do you recognize that the decision to plead guilty is a personal decision that you have to make, it's not your lawyer's decision, it's not a family member's decision, or a friend's decision, it's yours.  Hopefully your decision is based on the advice of your lawyer, but nonetheless it's your decision and not his.  Do you understand that?
>
> The Defendant:  I do, sir.

Plea Hr'g Tr. at 7-15.

The Government's lawyer then summarized the Rule 11 agreement aloud.  In this summary, the Government included the parties' calculation of the guideline range, explained the appeal waiver, and stated that

> Defendant understands that defendants generally have the right to attack their convictions and sentences by filing post conviction motions, petitions, or independent civil actions.  As part of this agreement, however, defendant knowingly and voluntarily waives that right and agrees not to contest his conviction or sentence in any post conviction proceeding, including but not limited to any proceeding under Title 28, United States Code, Section 2255.

Id. at 16-17.

The Court then clarified with Defendant that he understood the Government's summary and agreed with it:

> The Court:  Do you believe that [the Government's counsel] identified the important terms of [the Rule 11] agreement from your point of view?
>
> The Defendant:  Yes.

6

Id. at 17.

The Magistrate Judge also reviewed the implications of the plea agreement with

Defendant with respect to sentencing:

> The Court:  All right.  I want to go over a couple things with you
> just so that it's clear that you do understand them.  You will be
> pleading guilty to Count 2 of the indictment and under this term —
> under the terms of this agreement, the sentencing Judge would not
> sentence you to more than the high end of the sentencing guideline
> range that is estimated here, 63 to 78 months.  Is that the way you
> understand it?
>
> The Defendant:  It is, sir.

Id. at 17.

Finally, the Magistrate Judge went through each element of the offense to make sure the

guilty plea was proper:

> The Court:  The Government would be required to prove a couple
> of things in order for you to be convicted of this crime.  One, that
> you knowingly possessed any matter that contained an image of
> child pornography as — as that is defined under federal law.  And
> knowingly possessed it means that you knew that it was there
> when you possessed it.  Do you understand that's one thing the
> Government would have to prove?
>
> The Defendant:  I knew it was there, yes.
>
> The Court:  Okay.  And they would also have to prove that the
> child pornography that you were in possession of had been
> transported in interstate or foreign commerce by any means
> including a computer.  Do you understand that?
>
> The Defendant:  I do.
>
> The Court:  Okay.  And thirdly, that the — that you knew that
> these images contained or constituted child pornography within the
> meaning of the law.  Do you understand that?
>
> The Defendant:  I knew that.

> The Court:  Okay.  All right.  Do you think the Government can prove these three things?
>
> The Defendant:  Absolutely, yes.
>
> The Court:  All right.  Tell me in your own words what happened here that makes you think you are guilty of this offense?
>
> The Defendant:  I — I did do the crime.

Id. at 22-23.

Based on all of these questions and responses, the Magistrate Judge found that Defendant was competent and capable of entering an informed guilty plea, that the Defendant was aware of the nature of the charges, and that he understood the consequences of the guilty plea. Id. at 24. The Magistrate Judge also concluded that "the plea is knowing and voluntary and is supported by a factual basis for each of the essential elements of the offense." Id. Accordingly, he recommended this Court accept the guilty plea. Id. Neither party objected to the Magistrate Judge's recommendation, and the Court accepted the guilty plea and took the Rule 11 plea agreement under advisement on April 16, 2012. 4/16/12 Order (Dkt. 16).

On July 26, 2012, the Court sentenced Defendant to the lowest end of the agreed-upon guideline range — 63 months. See Judgment at 2 (Dkt. 17). At the sentencing hearing, the Court asked whether the parties had reviewed the presentence investigation report; Defendant's counsel responded "We have." See 7/26/12 Sentencing Tr. at 3 (Dkt. 21). The Court clarified whether Defendant's counsel had "reviewed it with [his] client." Counsel responded: "I have." Id. at 3-4. The Court then accepted the Rule 11 plea agreement at the parties' request. Id. at 4.

The Court also provided both Defendant and his counsel an opportunity to speak at the hearing before sentencing. Defendant's counsel emphasized Defendant's lack of a prior record, prior drug use and physical illness, and cooperation with the police and terms of his release on

bond.  Id. at 7-11.  Defendant claimed that he "learned to recognize the self-destructive factors in [his] life that led to [him] committing this crime," that he must "apologize for being a burden to the system," and that he was "so very sorry to the whole world for committing this crime."  Id. at 11-12.

After sentencing, Defendant appealed to the Sixth Circuit and was appointed new counsel.  Defendant's counsel then filed a motion to withdraw and a brief in accordance with Anders v. California, 386 U.S. 738 (1967), asserting that the appeal presented no arguable non-frivolous issues.  The Sixth Circuit agreed and dismissed the appeal.  It noted that its "independent review of the record reveals no issues of arguable merit."  5/16/13 Order at 2 (Dkt. 28).  The Sixth Circuit also explained that

> In accordance with Federal Rule of Criminal Procedure 11, the district court must verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged. . . . The record reflects that the magistrate judge who conducted the plea hearing substantially complied with Rule 11 and properly found that [Defendant]'s guilty plea was voluntary, knowing, and intelligent.

Id. (internal quotation marks and citations omitted).

Defendant then filed the instant motion to vacate his sentence under 28 U.S.C. § 2255 on July 10, 2013 (Dkt. 29).  Per the Court's Order, the Government filed a response on October 15, 2013 (Dkt. 38).

### III. 28 U.S.C. § 2255 STANDARD

This motion is brought pursuant to 28 U.S.C. § 2255(a), which provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to

> impose such sentence, or that the sentence was in excess of the
> maximum authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate,
> set aside or correct the sentence.

To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005) (internal citation omitted). Non-constitutional errors are generally outside the scope of § 2255 relief. See United States v. Cofield, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing "a fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999) (internal quotation marks and citation omitted).

A court should grant a hearing to determine the issues and make findings of fact and conclusions of law on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No evidentiary hearing is required if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Valentine v. United States, 488 F.3d 325, 333 (6th Cir. 2007) (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999)). "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Cases, Rule 4(b).

## IV. ANALYSIS

Defendant raises four grounds for relief in his motion, although the claims are a collection of vague and conclusory arguments. First, Defendant argues his counsel was

ineffective because counsel (1) only charged $5,000; (2) requested additional funding; (3) allegedly did not have sufficient time to review certain reports before sentencing; and (4) allegedly did not provide Defendant with a copy of the presentence investigation report. Mot. at 13-15 (CM/ECF pagination). Second, Defendant claims that the plea agreement was "signed under threat of immediate incarceration and under duress without [him] even seeing the entire document and worksheets or understanding the appeal waiver and other consequences." Id. at 1. Defendant claims the agreement was "unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea, which also denied [him] the right of appeal." Id. at 6. Third, Defendant claims his conviction was obtained by a "violation of the privilege against self-incrimination" because he may have wanted to speak to an attorney prior to talking to the FBI before his arrest. Id. at 7. Lastly, Defendant questions whether the Government could have proven its case at trial, such as whether he knew that "many" of the videos were of child pornography; whether he received a benefit from the dismissal of the distribution charge because he purportedly clicked "do not share" with every download; and whether his physical disability affected his psychological state. Id. at 8.

Given the appeal and post-judgment waiver contained in the plea agreement, the Court will first address whether Defendant knowingly, voluntarily, and intelligently entered into that agreement and/or whether it was the product of ineffective assistance of counsel. Because the Court concludes that the waiver is valid, the Court denies Defendant's motion.

### A.    The Agreement was Entered Into Knowingly, Intelligently, and Voluntarily

The Sixth Circuit has held that a plea-agreement waiver of § 2255 rights is generally enforceable so long as the plea agreement was entered into knowingly, intelligently, and voluntarily. See Watson, 165 F.3d at 489; see also Davila v. United States, 258 F.3d 448, 450

(6th Cir. 2001).  Indeed, a plea agreement with a valid waiver can even extend to preclude claims of ineffective assistance of counsel under 28 U.S.C. § 2255.  Davila, 258 F.3d at 451.  The waiver does not apply, however, where the claim goes to the validity of the guilty plea itself:

> It is worth emphasizing the distinction between appeals . . . that simply relate to issues a defendant has validly agreed not to appeal or attack collaterally, from those that go to the very validity of a guilty plea.  For example, in cases where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel . . . it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of his claim challenges the very validity of the waiver itself.

In re Acosta, 480 F.3d 421, 422 (6th Cir. 2007).

Here, Defendant claims that he fits within this exception.  Defendant argues that he was coerced into the guilty plea and that he did not enter into it knowingly or voluntarily, or with an understanding of its consequences.  Mot. at 1, 6. This claim, however, is belied by the record. First, Defendant claims that he signed the agreement "under threat of immediate incarceration and under duress."  Id. at 1.  But Defendant remained free on bond throughout the course of the proceedings, up until his sentencing.  Moreover, the Magistrate Judge specifically asked Defendant whether anyone had made him any outside promises in exchange for signing the plea agreement:

> The Court:  Well, my question is, has anybody made any promises to you that — that are not written down in this agreement that — that caused you to want to plead guilty?
>
> The Defendant:  No.  No, sir.
>
> The Court:  Okay.  So no one said oh, you're going to get probation, just plead guilty and I know you'll get probation.  No one said anything like that, did they?
>
> The Defendant:  That is correct.

Plea Hr'g Tr. at 12.  Accordingly, any "threat" of incarceration — real or otherwise — would have arisen out of the plea agreement, not in spite of it.

Next Defendant argues that he signed the agreement without "even seeing the entire document and worksheets."  Mot. at 1.  But the plea agreement and the plea hearing undermine this claim.   The plea agreement states directly above Defendant's signature that "[b]y signing below, defendant acknowledges having read (or been read) this entire document understanding it, and agreeing to its terms. . . . Defendant acknowledges having had a full and complete opportunity to confer with counsel, and that all of defendant's questions have been answered by counsel."   Plea Agreement at 10 (Dkt. 15).   Similarly, as described in detail above, the Magistrate Judge made certain at the plea hearing that Defendant had reviewed the plea agreement with his counsel and that he understood what he was agreeing to under the agreement:

> The Court:  Now the — the anticipated guilty plea here is pursuant to the terms of a written Rule 11 agreement as it's called.  Have you gone over that agreement with [counsel] to your satisfaction?
>
> The Defendant:  I have, sir.

Plea Hr'g Tr. at 11.  Defendant further testified under oath that he understood the terms of the plea agreement, that he agreed with the Government's recitation of the plea agreement's facts and consequences, and that he was pleading guilty of his own free will because he believed he was guilty of the crime described in count two.   Id. at 12, 14-15, 17, 23.  Nevertheless, the Magistrate Judge undertook an exhaustive review of the plea agreement and its consequences with Defendant.  There is no support for any claim Defendant may now raise that he never saw the document and that the agreement was made involuntarily or without understanding the charge and the consequences of the plea.

Defendant also claims that his signing of the plea agreement was not voluntary because he did not understand the appeal waiver. Mot. at 6. This too is unsupported by the record. The plea agreement clearly states that "If the sentence imposed does not exceed the maximum allowed by Part 3 of this agreement, defendant waives the right to appeal his/her conviction or sentence on any grounds." Plea Agreement at 7 (Dkt. 15). Similarly, at the plea hearing, both the Magistrate Judge and Government's counsel clearly explained the appeal waiver to Defendant, and Defendant stated on the record that he understood. Plea Hr'g Tr. at 11, 17, 21-22. There is simply no support for Defendant's claim that he did not understand the effect the plea agreement would have on his right to post-judgment proceedings.

Accordingly, the Court finds that Defendant knowingly, voluntarily, and intelligently entered into the Rule 11 plea agreement. This finding should come as no surprise to Defendant; the Sixth Circuit already concluded as much from its own review of the record, in which it upheld the validity of the agreement to bar Defendant's appeal. See 5/16/13 Order at 2 (Dkt. 28) ("The record reflects that the magistrate judge who conducted the plea hearing . . . properly found that Miller's guilty plea was voluntary, knowing, and intelligent.").

### B.       Ineffective Assistance of Counsel

Defendant also raises a claim of ineffective assistance of counsel. To the extent this claim relates to actions taken by counsel that were unrelated to the plea agreement, they are barred by the post-conviction waiver in the plea agreement. See Davila, 258 F.3d at 451-452 ("When a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack his or her sentence, he or she is precluded from bringing a claim of ineffective assistance

14

of counsel based on 28 U.S.C. § 2255."); see also In re Acosta, 480 F.3d at 422-423.[1]  To the

extent that Defendant claims the plea agreement was the product of ineffective assistance of

counsel, however, this is not subject to the plea agreement's waiver.  In re Acosta, 480 F.3d at

422-423.  Nevertheless, the Court finds that any claim of ineffectiveness as prejudicing the plea

agreement is undermined by both the record and Defendant's motion itself.

The plea agreement contains the following language directly above Defendant's

signature:  "Defendant also acknowledges being satisfied with defense attorney's advice and

representation."  Plea Agreement at 10 (Dkt. 15).  Similarly, the Magistrate Judge made certain

that Defendant was satisfied with counsel's representation prior to recommending acceptance of

the plea agreement:

> The Court:  Are you satisfied with the advice that [counsel has]
> given you so far in this matter?
>
> The Defendant:  I am, sir.

Plea Hr'g Tr. at 7.  Accordingly, the Court concludes that any claim that the plea agreement was

the product of ineffectiveness by Defendant's counsel is undermined by the record.  See In re

Davila, 258 F.3d at 451-452.

---

[1] Indeed, it appears that Defendant's allegations concerning the alleged ineffectiveness of his counsel relate to sentencing, not the entering into of the plea agreement.  These claims are barred by the plea agreement's waiver provision.  See Amundson v. United States, No. 10-cv-165, 07-cr-141, 2011 WL 1630905, at *3 (W.D. Mich. April 29, 2011) ("Mr. Amundson does not challenge either the voluntariness of the plea or counsel's performance in connection to it. Rather, he attacks counsel's performance as it relates to sentencing.  Accordingly, Mr. Amundson waived his claims."); see also In re Davila, 258 F.3d at 451-452 (affirming denial of § 2255 claim based on purported ineffectiveness of counsel with respect to sentencing due to post-conviction waiver); Short v. United States, No. 09-cv-622, 2010 WL 3810202, at *2 (W.D. Mich. Sept. 23, 2013) (dismissing ineffective assistance of counsel claim based on counsel's alleged lack of preparation at sentencing because of waiver in plea agreement); United States v. Majied, No. 08-20181, 2009 WL 4544963, at *2 (E.D. Mich. Dec. 2, 2009) (same).

Furthermore, the Court concludes that Defendant cannot meet the stringent standard required for relief pursuant to an allegation of ineffective assistance of counsel.  To satisfy this rigorous standard, Defendant would have to show "(1) that counsel's performance was deficient in that it 'fell below an objective standard of reasonableness'; and (2) that the defendant was prejudiced as a result of his counsel's deficient performance."  See United States v. Bailey, -- F. App'x --, 2013 WL 6333441, at *9 (6th Cir. Dec. 5, 2013) (citing Strickland v. Washington, 466 U.S. 668, 687-688 (1984)).  The Court does not need to "address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . [then] that course should be followed."  Strickland, 466 U.S. at 697.

Even if Defendant could establish that counsel's performance was deficient and that the plea agreement was the product of this deficiency — a tenuous conclusion in light of the record — the record and Defendant's own statements in his motion undermine any claim of prejudice. As the Sixth Circuit has explained, to satisfy the prejudice prong under Strickland, a Defendant must show that "but for errors of counsel, the result of the proceeding would have been different."  White v. United States, 16 F.3d 1223, at *3 (6th Cir. 1994) (Table) (citing Lynott v. Story, 929 F.2d 228, 232 (6th Cir. 1991)).  In the context of a plea bargain, Defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Anderson v. Carlton, 150 F. App'x 499, 501 (6th Cir. 2005) ("In the context of an allegedly involuntary guilty plea, prejudice can be demonstrated by showing that but for counsel's errors, the petitioner would not have pleaded guilty." (brackets, quotation marks, and citation omitted)).

Here, Defendant repeatedly stated under oath that he was guilty of the crime for which he was convicted. For example, at the plea hearing, Defendant stated that he "completely accept[ed] this responsibility," admitted that he "did do the crime," conceded that he believed the Government could "absolutely" prove each of the elements of the offense beyond a reasonable doubt, and acknowledged that he was "pleading guilty of [his] own free will because [he was] in fact guilty of this offense in Count 2 of the indictment." Plea Hr'g Tr. at 11-12, 14, 23. Similarly, at sentencing, Defendant stated that he "learned to recognize the self-destructive factors in [his] life that led to [him] committing this crime," that he must "apologize for being a burden to the system," and that he was "so very sorry to the whole world for committing this crime." Sentencing Tr. at 11-12. Defendant even continues to admit guilt in his motion, stating that he "does not deny [his] responsibility" and that he "want[s] it understood . . . that [he] know[s] [he] did wrong and was trying [his] best to cooperate." Mot. at 6-7.

In light of these repeated admissions of guilt, Defendant cannot show that but for any of the alleged errors by counsel, the result of his proceeding would have been different, i.e., he would not have pleaded guilty. Indeed, Defendant does not even claim in his motion that he would have insisted on going to trial; rather, he asserts that he does "not deny [his] responsibility, but [he] was denied effective assistance of [counsel]." Mot. at 6. This will not suffice. See Hunter v. United States, 160 F.3d 1109, 1115 (6th Cir. 1998) (holding that the defendant could not "satisfy the prejudice prong in the absence of any statement that he is actually innocent, or would have gone to trial if his attorney's performance had been different").[2]

---

[2] The Court also highlights that Defendant received a reduced sentence corresponding to the lowest end of the agreed-upon sentencing guideline range for the single count on which he was convicted, and he was able to get the remaining count contained in the indictment dismissed as part of the plea agreement. In light of Defendant's repeated admissions of guilt, this underscores that Defendant suffered no prejudice.

Accordingly, the Court concludes that the plea agreement's post-conviction waiver is valid as the agreement was entered into knowingly, voluntarily, and intelligently by Defendant and was not the product of ineffective assistance of counsel.   Given that the record and statements in his own motion conclusively refute Defendant's claims, the Court need not hold an evidentiary hearing in reaching this conclusion, nor did Defendant request one.  See Valentine v. United States, 488 F.3d 325, 333 (6th Cir. 2007).

### C.      Defendant's Remaining Claims

Given that the Court finds that the plea agreement's post-conviction waiver is valid, Defendant is barred from bringing his remaining post-judgment claims.  For example, Defendant claims that if he had "not been coerced [he] may have wanted to speak to a lawyer before talking to the FBI" prior to his arrest; that many of the videos "were only downloaded enough to see how young the victim was then it was stopped and deleted"; that he deleted many of the photos and videos and therefore may not have been "knowingly possessing" them; and that his physical disability affected his psychological state.  Mot. at 7-8.  These are precisely the types of claims that are covered by the waiver of post-judgment rights following Defendant's entering into the plea agreement (in which the stipulated facts also refute many of these claims).   Moreover, Defendant's admission under oath at the plea hearing that the Government could "absolutely" prove each of the elements of the offense undermines or moots most, if not all, of these claims.

### D.      Certificate of Appealability

Because Defendant's claim for relief lacks merit, the Court will also deny a certificate of appealability. To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could conclude that the petition

should have been resolved in a different manner, or that the issues presented were adequate enough for encouragement to proceed further.  See Slack v. McDaniel, 529 U.S. 473, 483–484 (2000).  For the reasons stated above, the Court will deny Defendant a certificate of appealability because reasonable jurists could not find this Court's assessment of his claims debatable.

## V.  CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion to Vacate Sentence Under 28 U.S.C. § 2255 (Dkt. 29).

SO ORDERED.

Dated:  January 29, 2014                         s/Mark A. Goldsmith
        Flint, Michigan                          MARK A. GOLDSMITH
                                                 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 29, 2014.

                                                 s/Deborah J. Goltz
                                                 DEBORAH J. GOLTZ
                                                 Case Manager